UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X

STEPHANIE MIYARES,

<div style="text-align:center">Plaintiff,</div>

<div style="text-align:right"><u>11 CV 4297 (RJS)</u></div>

<div style="text-align:center">-against-</div>

<div style="text-align:right">**ORAL ARGUMENT<br>REQUESTED**</div>

THE CITY OF NEW YORK; DET. EDWARD GARCIA,
SHIELD # 1346; DET. JAMES CONNOLLY, TAX ID
#941585; DET. SCOTT COTE, TAX ID # 936397; DET.
LARRY DUNN, TAX ID # 930082; DET. OSCAR
FERNANDEZ, TAX ID # 932636; DET. RAMU HILLER,
TAX ID # 926956; DET. DARRYL SCHWARTZ, TAX ID
# 933534; SGT. RONALD SMITH, TAX ID # 898556; and,
DET. JAMES WHITE, TAX ID # 929351, the individual
defendant(s) sued individually and in their official capacities,

<div style="text-align:center">Defendants.</div>

--------------------------------------------------------------------- X


<div style="text-align:center">

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

</div>

Dated: January 24, 2013

<div style="margin-left:40%">

KUSHNER LAW GROUP, P.L.L.C.
*Attorney(s) for Plaintiff*
16 Court Street, Suite 2901
Brooklyn, New York 11241
718.504.1440 (tel) / 718.504.4630 (fax)


By:      Michael P. Kushner, Esq.

</div>

| | |
|---|---|
| Michael O. Hueston, Esq. | Javier A. Solano, Esq. |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |
| 16 Court Street, Suite 3301 | 350 Fifth Avenue, Suite 5900 |
| Brooklyn, New York 11241 | New York, New York 10118 |

<u>**TABLE OF CONTENTS**</u>

<u>**INTRODUCTION**</u>……………………...……………………………………… 1

<u>**STATEMENT OF FACTS**</u> …………….....……………………………………. 3

<u>**STANDARD OF REVIEW**</u> …………………………………………………. 3

<u>**ARGUMENT**</u>

     **I.**    **DEFENDANTS' MOTION FOR SUMMARY**
           **JUDGMENT IS IMPROPERLY SUPPORTED**
           **AND IS PREMATURE** ………………………………………… 4

     **II.**    **DEFENDANTS DID NOT HAVE A VALID**
           **SEARCH WARRANT, THUS THEIR ENTRY INTO**
           **THE APARTMENT AND SUBSEQUENT**
           **SEIZURE ARE VIOLATIVE OF THE FOURTH**
           **AMENDMENT** ………………………………………………… 6

     **III.**    **DEFENDANTS ARE NOT ENTITLED TO**
           **SUMMARY JUDGMENT ON PLAINTIFF'S**
           **CLAIMS FOR FALSE ARREST AND IMPRISONMENT** ……… 7

           **A.**  **Defendants' Proffered Basis for Probable**
               **Cause is Misleading** ……………………………………8

           **B.**  **Defendants Cannot Establish Constructive Possession**…………9

     **IV.**    **PLAINTIFFS MALICIOUS PROECUTION CLAIMS**
           **ARE PROPERLY SUPPORTED AND ANY ISSUE**
           **AS TO PROBABLE CAUSE IS PURELY FACTUAL**
           **AND INAPPROPRIATE FOR SUMMARY JUDGMENT** ……… 13

           **A.**  **Taking all Disputed Facts in Favor of the Plaintiffs,**
               **the Proceeding Against Plaintiffs were not Supported**
               **by Probable Cause** ………………………………………… 14

           **B.**  **Defendants Acted with Malice in Proceeding**
               **Against Plaintiffs** ……………………………………………14

     **V.**    **THE INDIVIDUAL DEFENDANTS ARE NOT**
           **ENTITLED TO QUALIFIED IMMUNITY**
           **BECAUSE THEIR ACTIONS WERE NOT**
           **OBJECTIVELY REASONABLE**…………………………………15

**VI.   THE PERSONAL INVOLVEMENT OF DEFENDANT
SERGEANT RONALD SMITH HAS BEEN ESTABLISHED** ......18

**VII.   MUNICIPAL LIABILITY** …………………………………….……….. 18

**VIII.   SUMMARY JUDGMENT MUST BE DENIED AS
TO PLAINTIFFS' STATE LAW CLAIMS** …………………………... 20

**IX.   CONCLUSION** …………………………………………………….. 21

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) …………………………………… 3

*L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81 (2d Cir. 1998) …………………………… 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ………………………………………………4

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208 (2d Cir. 2001) ……………………… 4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ……………………………………… 4

*Douglas v. City of New York,* 595 F. Supp. 2d 333 (S.D.N.Y. 2009) ………………………… 4

*Weyand v. Okst,* 101 F.3d 845 (2d Cir. 1996) ……………………………………………….. 7

*Broughton v. State*, 37 N.Y.2d 451 (N.Y. 1975) ……………………………………………7

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994) ……………………………………….. 7

*Illinois v. Gates,* 462 U.S. 213 (1982) …………………………………………………… 7, 14

*Singer v. Fulton Cty. Sherriff*, 63 F.3d 110 (2d Cir. 1995) ………………………………….. 8

*O'Neill v. Town of Babylon*, 986 F.2d 646 (2d Cir. 1993) …………………………………… 8, 17

*Takacs, v. City of New York*, 2011 U.S. Dist. LEXIS 7055 (S.D.N.Y. Jan. 24, 2011) ………..... 9

*United States v. Heath*, 455 F.3d 52 (2d Cir. 2006) ………………………………………… 9

*United States v. Pennington*, 287 F.3d 739 (8th Cir. 2002) ………………………………… 9

*United States v. Holder*, 990 F.2d 1327 (D.C. Cir. 1993) …………………………………… 9

*Davis v. City of New York*, 2007 U.S. Dist. LEXIS 10555 (E.D.N.Y. Feb 15, 2007) ……… 10

*Torres v. Hanslmaier,* 1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 8, 1995) ............... 10, 12

*People v. Lawrence Johnson,* 2009 NY Slip Op 51009 (U)(Criminal Ct of the City of New York, May 26, 2009).................................................................................... 10

*People v. Olivo,* 120 A.D.2d 466 (1st Dept 1986) ................................................. 10

*United States v. Jenkins,* 90 F.3d 814 (3d Cir. 1996) ............................................. 11

*United States v. Brown,* 3 F.3d 673 (3d Cir. 1993) ............................................... 11

*United States v. Rodriguez,* 392 F.3d 539 (2d Cir. 2004) ....................................... 11

*United States v. Payton,* 159 F.3d 49 (2d Cir. 1998) ............................................ 11

*United States v. Gordils,* 982 F.2d 64 (2d Cir. 1992) ............................................ 11

*United States v. Traylor,* 393 Fed. Appx. 725( 2d Cir. 2010) ................................. 12

*People v. Portorreal,* 25 Misc.3d 1238A (Crim Ct, Queens County) ..........................13

*People v. Grajales,* 199 N.Y. Misc. LEXIS 67 (Sup. Ct. Bronx County) ..................... 13

*Mandell v. Cty of Suffolk,* 316 F.3d 368 (2d Cir. 2003) ......................................... 16

*Golino v. City of New Haven,* 950 F.2d 864 (2d Cir. 1991) ..................................... 16

*McClellan v. Smith,* 439 F.3d 137 (2d Cir. 2005) ................................................. 16

*Lennon v. Miller,* 66 F.3d 416 (2d Cir. 1995) ..................................................... 16

*Martinez v. Simonetti,* 202 F.3d 625 (2d Cir. 2000) .............................................. 16

*Papineau v. Parmley,* 465 F3d 46 (2d Cir. 2006) ................................................. 16

*Posr. V. Court Officer Shield #207,* 180 F.3d 409 (2d Cir. 1999) .............................. 17

*Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123 (2d Cir. 1997) ............................ 17

*Gerstein v. Pugh,* 420 U.S. 103 (1975) ............................................................. 17

*Kinzer v. Jackson,* 316 F.3d 139 (2d Cir. 2003) .................................................. 14

*Boyd v. City of New York,* 336 F.3d 72 (2d Cir. 2003) ........................................... 14

*Marshall v. Sullivan,* 105 F. 3d 47 (2d Cir. 1996) ............................................... 14

*Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) …………………………………………… 14

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) ……………………………………… 18

*Riviello v. Waldron*, 47 N.Y.2d 297 (1979) ……………………………………….. 19

*Barton v. City of New York,* 831 N.Y.S.2d 882 (Sup. Ct. Kings County 2007) …………… 19

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ………………………………… 19

*Davis v. City of New York*, 142 F. Supp.2d 461 (S.D.N.Y. 2001) ……………………….. 19

*Lynch v. Suffolk County Police Dep't, Inc.*, 348 Fed. Appx. 672 (2d Cir. 2009) …………… 20

## Statutes and Rules

42 U.S.C. § 1983 ……………………………………………………………... passim

Fed. R. Civ. P. 34 (b) (2) (E) ……………………………………………………   4

Fed. R. Civ. P. 56 (c) (2) …………………………………………………… 3, 4

Fed. R. Civ. P. 56 (d) ……………………………………………………… 5, 6, 15

Local Rule 56.1 ……………………………………………………………… 3

N.Y. Gen. Mun. Law § 50, *et seq*.……………………………………………… 20, 21

**INTRODUCTION**

On March 25, 2010, plaintiff Stephanie Miyares was an overnight guest in the apartment of her boyfriend, Mr. Victor Fertides, located at 562 Academy Street, Apartment H24, New York, New York (hereinafter referred to as "the apartment").  Plaintiff Stephanie Miyares brings this action against defendants, City of New York and members of the Narcotics Bureau Manhattan North of the New York City Police Department.  The claims arise from plaintiff's false arrest and unlawful seizure that occurred on March 25, 2010, and the subsequent malicious prosecution that terminated in plaintiff's favor when all charges were dismissed on September 29, 2010.  The search warrant that gave rise to the defendants' entry into the apartment was obtained through false and misleading statements and stale information, Ms. Miyares was arrested despite the absence of any competent evidence that she had dominion and control over the contraband that was discovered secreted away inside the apartment, and the defendants falsely and maliciously told the New York County District Attorney's Office that plaintiff had committed various crimes.  Defendants now move for summary judgment on all of plaintiffs' state and federal claims.

The defendants have proffered no competent evidence to connect plaintiff with the contraband that was discovered secreted away inside of the apartment.  Defendants' summary judgment motion should be denied because there are triable issues of material fact as to the heart of plaintiff's claims.  Among other things, the parties differ about the following issues: (1) whether any confidential-informant buys ever occurred at or in the vicinity of the apartment; (2) whether the defendants were in possession of any credible information concerning drug trafficking inside of the apartment; (3) what information was contained in the affidavit of defendant Garcia, which led to the issuance of the search warrant permitting the defendants' entry into the apartment; (4) whether Ms. Miyares exercised dominion and control over any of the contraband that was recovered secreted away inside of the apartment when the defendants executed the search warrant; (5) whether the

marijuana recovered from the bedroom was in plain view or in a place where Ms. Miyares could exercise any control or dominion over it; (6) whether the City of New York was aware that these members of the Narcotics Bureau Manhattan North were insufficiently trained concerning the execution and procurement of search warrants; and, (7) whether the City of New York failed to adequately monitor, supervise, and re-train these members of the Narcotics Bureau Manhattan North concerning the execution and procurement of search warrants.

Notwithstanding the wealth of case law and statutory law that requires an evidentiary showing that the persons arrested exercised dominion and control over the contraband, the defendants argue that plaintiff's mere presence in the apartment is more than sufficient to establish arguable probable cause. This argument is simply wrong: whether probable cause existed depends on the location of the contraband in relation to the plaintiff, whether the contraband was in plain view, and whether or not plaintiff exercised some degree of dominion or control over the contraband.

Without some specific, competent evidence that plaintiff exercised dominion and control over the contraband that was secreted away inside the apartment, there was no basis for Ms. Miyares' arrest. Moreover, defendants knew that they could not arrest plaintiff without some evidence linking her to the recovered contraband. That the defendants lacked probable cause for the arrest was confirmed when the charges were dismissed by the New York County District Attorney's Office. Defendants also claim to have probable cause to arrest Ms. Miyares for endangering the welfare of a child in violation of Penal Law § 260.10(1) because the complaint alleges that Ms. Miyares' four-month-old infant was in the same room as marijuana that was discovered secreted inside of a box behind a dresser. However, this argument is without merit because the marijuana was not in plain sight in the bedroom, there is no room presumption for

marijuana possession in New York, and the elements of an endangering charge are not met in this matter where an infant child is found in the same bedroom as a closed container of marijuana.

In addition to the existence of triable issues of material fact, defendants' motion for summary judgment is, in part, improperly supported pursuant to Fed. R. Civ. P. 56 (c) (2). Defendants' motion for summary judgment should be denied in all respects concerning plaintiff's claims. Finally, if the Court grants defendants' motion for summary judgment, it would be premature for this Court to dismiss plaintiff's state law claims with prejudice. Defendants argue that plaintiff's state law claims should be dismissed with prejudice because the statute of limitations expired on some of plaintiff's false arrest claims and no amended notice of claim was submitted concerning plaintiff's malicious prosecution claims. However, as will be more fully discussed below, plaintiff has several equitable arguments to be made concerning the timeliness of her state law claims, and a New York State court would be the most provident place for those arguments to be heard and decided.

## STATEMENT OF FACTS

The facts of this case are set out, incorporated by reference herein, in the accompanying Plaintiff's Response to Defendants' Local Rule 56.1 Statement, the declaration of Michael P. Kushner, and the documents annexed thereto, as well as those documents submitted by defendants.

## STANDARD OF REVIEW

A district court may not grant summary judgment if a genuine issue of material fact exists. *Jenkins v. City of New York,* 478 F.3d 76, 89-91 (2d Cir. 2007). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor. *L.B. Foster Co. v. American Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). The moving party bears the

burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law…' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist with respect to plaintiffs' claims, and the resulting liability of each defendant.

Defendants' motion for summary judgment overlooks the "irreconcilable conflicts between the parties' accounts of what happened" between March 23, 2010 and the dismissal of all charges against plaintiff, and ask this Court to disregard well settled law prohibiting the Court, on a motion for summary judgment, from resolving factual disputes or making credibility determinations. *Douglas v. City of New York,* 595 F. Supp. 2d 333, 337 (S.D.N.Y. 2009).  Accordingly, defendants' motion for summary judgment must be denied in its entirety.

## ARGUMENT

### I.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS IMPROPERLY SUPPORTED AND IS PREMATURE

Plaintiff objects to defendants' reliance on Exhibit H because those documents are inadmissible documentary evidence and pursuant to Fed. R. Civ. P. 56 (c)(2) should not be considered by the Court on a motion for summary judgment.  The documents at Exhibit H are unsigned police reports that have been offered by defendants to assert the truth contained in the documents despite the fact that multiple levels of hearsay exist on the documents and no foundational support exists in the record for the authenticity of these documents.  Further, the documents were clearly produced from an electronic source but have not been produced to plaintiff in their native format despite plaintiff's demand that any electronic discovery be produced in its native format.  *See* Fed. R. Civ. P. 34 (b) (2) (E).

Further, defendants' motion for summary judgment is premature because they have not fully complied with all discovery demands that were submitted by plaintiff. For instance, defendants have not provided plaintiff with the following essential documents that have been requested on numerous occasions or should have been turned over by defendants in their Rule 26.1 Disclosures: (a) The affidavit of defendant Garcia in support of the search warrant that was used to enter the apartment on March 25, 2010; (b) Any and all documents that memorialize the investigation into drug trafficking at 562 Academy Street, New York, New York that led to the issuance of five separate search warrants that all appear to have been executed within a one-week period in March and April 2010; (c) Expenditure of funds reports that would show whether and to what extent confidential informant buys occurred in Apartment H24 or the building located at 562 Academy Street, New York, New York; (d) An exact duplicate of defendant Garcia's "file" that concerns the investigation into criminal activity in apartment H24 at 562 Academy Street; and (e) Any and all electronically stored information that is maintained by the NYPD concerning the investigation into criminal activity in apartment H24 at 562 Academy Street, New York, New York.

Plaintiff has submitted a declaration Pursuant to Fed. R. Civ. P. 56 (D) describing in detail how these documents impact the plaintiff's ability to defend against defendants' Motion for Summary Judgment. Plaintiff herewith incorporates the factual allegations contained in the annexed declaration as if more fully set forth herein. Without the production of these documents, plaintiff is extraordinarily prejudiced in her ability to defend against this motion. Pursuant to Fed. R. Civ. P. 56 (D), the Court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Plaintiff would respectfully recommend to the Court that the motion be deferred to allow time for defendants to produce the requested discovery and permit plaintiff an opportunity to submit additional arguments in opposition to defendants' motion for summary judgment.

II.     **DEFENDANTS DID NOT HAVE A VALID SEARCH WARRANT, THUS THEIR ENTRY INTO THE APARTMENT AND SUBSEQUENT SEIZURE ARE VIOLATIVE OF THE FOURTH AMENDMENT**

Defendants, in conclusory fashion, purport to have had a valid search warrant that authorized their entry into plaintiffs' home on March 25, 2010.  It is argued by defendants that "plaintiff has offered no evidence whatsoever to show that Detective Garcia knowingly or recklessly made a false statement to the judge, but rather offers a conclusory allegation that Defendants 'unlawfully entered the apartment.'"  *See*, Point I of defendants' Memorandum of Law, dated December 14, 2012.  This argument completely ignores that fact that defendants have failed to produce the affidavit in support of the search warrant that was submitted by defendant Garcia or any of the supporting police paperwork that would tend to discredit defendants' assertion that the affidavit was lawfully obtained.  For the reasons set forth above in Point I, plaintiff states pursuant to Fed. R. Civ. P. 56 (D) that the information to defend against this argument has been withheld from plaintiff by defendants and that it is material to her opposition to this motion for summary judgment.

However, this argument also ignores several extraordinarily material disputes of fact that exist concerning the investigation into the narcotics trafficking at 562 Academy Street.  These disputes of fact are the following: (1) Whether any drugs were sold from inside the apartment; and, (2) Whether any drugs were sold from the front door of the apartment in 2010.  Defendants appear to assert that their confidential informant purchased drugs from the apartment.  However, according to the Declaration of Victor Fertides, this is simply not true.  *See*, Ex. 1 annexed to the January 24, 2013 Declaration of Michael P. Kushner, Esq., at ¶ 4.

These disputed issues of material fact are proper for a jury to decide.  The accompanying statement pursuant to Fed. R. Civ. P. 56 (D) further highlight additional discovery that will tend to discredit defendants' assertion that they possessed a valid search warrant and are

entitled to summary judgment on this point as a matter of law.  Defendants do not and can not put forth any competent evidence to counter the factual allegations that remain to be resolved concerning the underlying investigation into narcotics trafficking that culminated in the unlawful entry into plaintiff's apartment.  As with the other opposed portions of defendants' motion for summary judgment, the facts simply have not been clearly produced such that as a mater of law, defendants should succeed.

### III.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR FALSE ARREST AND IMPRISONMENT

The defendants' motion for summary judgment of the plaintiffs' claim for false arrest and imprisonment rests on a profoundly misleading interpretation of both the law and the facts. More precisely, the defendants suggest that this Court adopt a new bright-line, strict liability standard, under which probable cause exists to arrest any and all occupants of an apartment when contraband is found therein, regardless of where the contraband is recovered from, the location of the individuals, and the absence of evidence connecting the apartment to the contraband.  Such an extreme reading of the law is unsupported by the defendants' selective citations, much less the larger body of case law.

As a general matter, it is well settled that the "existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under Section 1983." *Weyand v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996), citing *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975).  A determination of whether probable cause to arrest exists depends on the "totality of the circumstances." *Bernard v. United States*, 25 F.3d 98, 102, (2d Cir. 1994), citing *Illinois v. Gates,* 462 U.S. 213, 230, (1982).  Probable cause is established "when the arresting officer has 'knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the

person to be arrested." *Singer v. Fulton Cty. Sherriff*, 63 F.3d 110, 118 (2d Cir. 1995), citing *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993).

Here, to establish probable cause for the plaintiff's arrest, the defendants have to show that Ms. Miyares constructively possessed the contraband found secreted within the apartment. The doctrine of constructive possession requires some showing of a nexus between the contraband and the person to be arrested; that the putative criminal defendant was able to exercise control and dominion over the contraband. Here, there is no evidence of any such constructive possession by the plaintiff. Further, defendants' proffered basis for arresting Ms. Miyares for endangering the welfare of a minor is misleading and not supported by the relevant facts or law. Accordingly defendants' motion should be denied.

### A.   Defendants' Proffered Basis for Probable Cause is Misleading

Defendants argue that probable cause existed to believe plaintiff constructively possessed the contraband that was recovered during the execution of the search warrant. Defendants state that "Most significantly, plaintiff was found sleeping in the bedroom with her baby and Victor Fertides – the target of the warrant – next to a box from which detectives recovered 18 bags of marijuana and drug paraphernalia." *See* defendants' Memorandum of Law, p. 8. However, this statement as well as the prior allegation that "[i]t is undisputed that Detective Garcia recovered approximately 18 bags of marijuana, multiple small plastic ziplock bags, and two scales from a box in the bedroom that was located on a dresser near the window during the search" are misleading. *See*, Id. at p. 7. The location of this box is far from undisputed; it materially goes to the heart of plaintiff's claims and defendants' affirmative defenses. Plaintiff herewith proffers the Declaration of Victor Fertides that clearly and unequivocally asserts that the box from the bedroom was behind a dresser in the windowsill. *See*, Ex. 1, ¶ 5.

Defendants claim that the box was recovered "next to the bed" on four separate occasions to support their contention that probable cause existed, either to presume that Ms. Miyares constructively possessed the drugs, or that she was endangering the welfare of her four-month old baby.   However, as argued above, plaintiff has put forth credible information to contradict this assertion and thus, probable cause based upon this basis is clearly an issue that must survive summary judgment and be put forth to a jury to decide the issue.   Further, defendants' allegation that probable cause existed to arrest Ms. Miyares for constructively possessing the items that were recovered from inside of a closet are completely belied by the fact that Ms. Ramona Martinez, the leaseholder for the Apartment had her arrest voided.

What defendants are left with as the basis for their probable cause then, is simply the presence of contraband that is discovered secreted away inside of an apartment; the plaintiff neither exercised dominion or control over the area where the contraband was recovered, nor could she have because she was not a leaseholder, nor was she aware of the presence of the contraband.  Such a "flimsy reed" hardly survives even the barest scrutiny into whether probable cause existed to arrest either plaintiff.

**B.       Defendants Cannot Establish Constructive Possession**

The doctrine of constructive possession is not new, nor is it in dispute.  As the Hon. Leonard B. Sand recently held:

> The doctrine of constructive possession allows the police to find probable
> cause to arrest anyone in a dwelling when contraband is discovered in plain
> view and it reasonably appears that all members of the dwelling
> exercised dominion and control over the area in which the contraband is found.

*Takacs, v. City of New York*, 09-cv-481 (LBS), 2011 U.S. Dist. LEXIS 7055 at *8 (S.D.N.Y. Jan. 24, 2011), citing *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006), *United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002), *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993).

Page 9

Similarly, in *Davis v. City of New York*, 04-cv-3299 (JFB)(RLM), 2007 U.S. Dist. LEXIS 10555 *17 (E.D.N.Y. Feb 15, 2007), the Hon. Joseph F. Bianco correctly articulated the existing state law standard, holding,

> Under New York law, a person 'constructively possess tangible property when he exercises dominion and control over the property with a sufficient level of control over the area in which the contraband is found.

*Id.*, citing *Torres v. Hanslmaier*, 94-cv-4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7 (S.D.N.Y. May 8, 1995). *See also*, *People v. Lawrence Johnson*, 2008NY091609, 2009 NY Slip Op 51009 (U) [23 Misc 3d 1130(A)] (Criminal Court of the City of New York, May 26, 2009 (citing appellate division cases for the rule that "Dominion and control can be demonstrated in a variety of ways, including proximity of a defendant to contraband, defendant's authority over a person who possesses contraband as expressed via instructions, or via commands, or defendants control over a premises); *People v. Olivo*, 120 A.D.2d 466, 466-467 (1st Dept 1986) (an inference of possession cannot be placed upon so slender a reed as the access a defendant share with other adults who also could have owned the property).

The *Davis* case is instructive. There, members of the NYPD executed a search warrant in an apartment where various plaintiffs, including brothers James, Jesse, and Roosevelt Davis lived. According to the police, marijuana was recovered in plain view in the bedroom James and Jesse shared and bullets were recovered from a drawer in Roosevelt's bedroom. The plaintiffs, however, stated that the only marijuana in the house was in Roosevelt's pocket, which the police seized during the search. *Id.* at *6. The Court denied defendants' motion for summary judgment, finding that while there was no dispute that marijuana was recovered in the apartment, a question of fact existed as to whether it was in plaint view in the bedroom, or on Roosevelt's person. *Id.* at *23.

More significantly, the Court also found that summary judgment was not appropriate with respect to the arrest of James and Jesses for the bullets recovered from Roosevelt's room.

There, the Court held, the mere fact that they were in the same apartment as the bullets did not, without some evidence of their dominion and control over the bullets, establish constructive possession. *Id.* at 30-31, citing *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996)("Dominion and control are not established, however, by mere presence on the property where it is located or mere association with the person who does control the drug or property.") (citation and quotations omitted); *see also United States v. Brown*, 3 F.3d 673, 681 (3d Cir. 1993)("[W]hile the evidence may be sufficient to show that [the defendant] was residing at the [co-defendant's] home and that she knew that drugs were in the house, the evidence is not sufficient to support the finding that she exercised dominion and control over the drugs.").

The Second Circuit has confirmed the general rule that proximity and knowledge do not, without more, compel a finding of constructive possession.  As the Court has held, "[t]o establish constructive possession, the government must demonstrate that [the defendant] had the power and intention to exercise dominion and control over the heroin." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004), citing, *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). Furthermore, "mere presence at the location of contraband does not establish possession." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988)(per curium).  And, in *United States v. Samaria*, 239 F.3d 228 (2d Cir. 2001), the Second Circuit held that the defendant who was a passenger in his own car while it contained contraband was not in constructive possession of stolen goods because "there is no evidence that [the defendant] handled any of the boxes or directed where they were to be taken or what was done with them." *Id* at 239.  Thus "mere proximity or presence is therefore insufficient to support a finding of constructive possession."  *Rodriguez*, 392 F.2d at 548, citing *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir. 1992).

Notwithstanding the well settled law on constructive possession and probable cause, defendants now suggest that this Court ought to create a new rule, one that would hold that

Page 11

probable cause exists to arrest any and all individuals found in an apartment where contraband is located, regardless of whether there is any evidence to suggest these individuals exercised dominion and control over that contraband.  Such a rule would stand well-settled jurisprudence on its head.

The cases cited by defendants for this proposition are unavailing.  For instance, in *Torres v. Hamslmaier*, the district court addressed a habeas petition challenging the sufficiency of the evidence that he possessed the contraband found in his apartment.  The district court noted not only that there was ample evidence that petitioner resided in the apartment with his wife and child, but that the "petitioner admitted to [the arresting officer] that any drug paraphernalia found in the apartment belonged to him." This statement, coupled with the evidence of his residency, established constructive possession. 94-cv-4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7 (S.D.N.Y. May 2, 1995).  In no way does *Torres* stand for the proposition that a resident in an apartment is, as a matter of law, in constructive possession of all contraband in an apartment.

In *United States v. Traylor*, the Circuit held that concealment of drugs in a container of Clorox wipes did not preclude a finding of probable cause to believe criminal defendant was involved in criminal activity related to seized drugs since other circumstances, including the officers' prior knowledge of prior drug sales in the apartment, minimal furnishings in the apartment, and the fact that defendant had access to the apartment, supported the officers' belief that the premises were used for drug trafficking. 393 Fed. Appx. 725 (2d Cir. 2010).  However, here, there are no further facts that would support defendants' assertion that plaintiff was constructively in possession of the contraband in the apartment.  For instance, defendants have proffered no competent evidence concerning prior drug sales in the apartment.  Coupled with the other shortcomings of defendants' arguments concerning probable cause, *Traylor* provides no support for defendants' argument that probable cause existed to arrest Ms. Miayres for possession of the contraband concealed inside of the apartment.

Page 12

Finally, defendants' reliance on *People v. Portorreal* concerning the probable cause to arrest Ms. Miyares for Endangering the Welfare of a Child is misplaced. 25 Misc.3d 1238A (Crim Ct., Queens County, Dec. 10, 2009). In *Portorreal*, the child at issues was a three-year old toddler and the drugs that were recovered were clearly within plain-view. This case at bar is completely different where the marijuana that was recovered was not in plain sight in the bedroom, there is no room presumption for marijuana possession in New York, and the elements of an endangering charge are not met in this matter when an infant child is found in the same bedroom as a closed and concealed container of marijuana. *See People v. Grajales*, 199 N.Y. Mis. LEXIS 67, 179 Misc., 2d 793 (Sup. Ct. Bronx County).

Here, the record demonstrates that all of the contraband was recovered secreted away in the apartment. Defendants cannot show any link that would establish plaintiff's exercise of dominion or control over the area where the contraband was recovered and thus the defendants had no basis to arrest plaintiff for constructive possession. For all these reasons, it is argued that the issue of probable cause should be brought before a jury to determine the reasonableness of defendants' actions.

## IV. PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS ARE PROPERLY SUPPORTED AND ANY ISSUE AS TO PROBABLE CAUSE IS PURELY FACTUAL AND INAPPROPRIATE FOR SUMMARY JUDGMENT

On September 29, 2010, all charges against plaintiff were dismissed by the New York County District Attorney's Office. The actions and involvement of defendant Garcia and his supervisor, defendant Smith in prosecuting plaintiff in relation to the weapons, drug charges, and endangering the welfare of a minor constitute an act of malicious prosecution. To maintain a § 1983 action for malicious prosecution, the plaintiff must demonstrate: (1) that defendants commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in favor of the plaintiff; (3) that the proceeding was not supported by probable cause; and (4) that defendants acted

with malice. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). The first two elements are satisfied in this case since plaintiff was prosecuted and acquitted. The following sections demonstrate that probable cause and malice are genuine issues for trial.

### A.     Taking all Disputed Facts in Favor of the Plaintiff, the Proceeding Against Plaintiff was not Supported by Probable Cause

Probable cause is defined as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). The determination of whether probable cause exists is based on consideration of the totality of the circumstances with reference to the information available to the officer at the time. *Marshall v. Sullivan,* 105 F. 3d 47, 54 (2d Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 231-33 (1983)). Defendants rely on their arguments advanced in support of their assertion that probable cause existed to initiate and continue the prosecution against plaintiff. Plaintiff therefore relies on her opposition to defendants' assertions that are argued, *supra*. There was no probable cause for the plaintiff's arrest and there was certainly no probable cause for her prosecution. Simply put, defendants improperly arrested plaintiff and continued the prosecution against her without any shred of probable cause. Plaintiff was required to attend court appearances for approximately six months to defend against these baseless charges and makes claim for loss of income related to this time.

### B.     Defendants Acted with Malice in Proceeding Against Plaintiffs

Malice is typically a question for the jury. *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994). Given that there was lack of probable cause, a jury can determine that defendants acted with malice in pursuing the prosecution of plaintiff. *Id.* (explaining that malice may be inferred from a lack of probable cause and is typically a question for the jury). Defendants' maliciousness can be inferred from the actions of defendants, specifically: (1) the arrest of plaintiff without probable cause

after contraband was recovered that was secreted inside of the apartment; (2) the fabricated paperwork that was prepared to cover up the investigative steps that were taken; (3) the false information that was provided to the New York County District Attorney's Office to continue the prosecution against plaintiffs; and, (4) the fact that the charges were dismissed and sealed against plaintiff prior to the resolution of Victor Fertides or Yasmil Fertides' criminal cases.   These circumstances raise substantial questions and require that a jury determine whether malice was present.

## V.    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR ACTIONS WERE NOT OBJECTIVELY REASONABLE

Plaintiff has demonstrated in the accompanying Declaration of Michael P. Kushner, Esq. pursuant to Fed. Civ. P. 56 (D) that material necessary to oppose this portion of the defendants' motion for summary judgment has inexplicably been withheld from plaintiff in the discovery process.   Particularly, the affidavit in support of the search warrant and the NYPD documents that memorialize the investigation into drug sales at 562 Academy Street are essential for plaintiff to make any credible argument concerning the application of qualified immunity to the facts at hand.   For all of the reasons stated *supra*, at point I, plaintiff avers that this issue is premature for any determination on summary judgment and must survive defendants' attempt to bring the issue before this Court without providing the requested documents.

However, what is clear from the limited discovery that has been disclosed is that none of the individual defendants are entitled to qualified immunity because no reasonable police officer could find the arrest of plaintiff objectively reasonable, particularly here, where the defendants found all of the contraband secreted away inside the apartment and plaintiff was not a tenant, nor in a position to exercise any sort of dominion or control over the places where the contraband was recovered.   The individual defendants' acts here take them outside of the doctrine

Page 15

that generally will shield police officers "from liability for civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982); *Mandell v. Cty of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (A government actor may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.").

As the Second Circuit observed in 1991, "[t]he right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Thus, an arresting officer may be entitled to qualified immunity with respect to claims of false arrest and malicious prosecution only, "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2005), quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995); *see also, Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  There is no question that the conduct here constitutes the type of police misconduct that cannot be shielded by qualified immunity.

The Second Circuit has articulated the following standard for determining motions for qualified immunity where the test is objective reasonableness:

> [I]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment.  An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances.

*Lennon v. Miller*, 66 F.3d at 420-421; *see also, Papineau v. Parmley*, 465 F3d 46, 59-60 (2d Cir. 2006).

The salient issue before this Court is whether it was objectively reasonable for the individual defendants to believe that they could arrest Ms. Miyares without violating her constitutional right not to be falsely arrested and imprisoned and have a malicious prosecution

Page 16

brought against her.  The record before this Court is unequivocal: not only could a trier of fact conclude that the conduct was objectively unreasonable, such a conclusion is the only one that can be reached on the record before this Court.  Accordingly, the individual defendants' motion for summary judgment based on qualified immunity should be denied, and the affirmative defense should be stricken altogether.

It is well settled that the elements of a federal constitutional claim for false arrest under 42 U.S.C. § 1983 are substantially the same as a state law false arrest claim.  *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996).  In sum, in order to place a person under arrest, the arresting officer must be in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense.  *Posr. V. Court Officer Shield #207,* 180 F.3d 409, 417 (2d Cir. 1999); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997), citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir. 1993).

In the case at bar, there is no question that contraband was recovered that was secreted away inside of the apartment.  The defendants cannot point to any fact that would indicate that plaintiff exercised dominion or control over the location where the contraband was recovered. Under these circumstances, no reasonable officer could have believed this to be acceptable conduct. Further, there can be no dispute that a reasonable officer could have believed that marijuana recovered from inside of a closed container and secreted away behind a dresser would provide a valid basis for arresting Ms. Miyares on the charge of endangering the welfare of a four month old who was asleep in the bedroom.

As there is ample evidence that the defendants arrested the plaintiff solely because of her presence in the same apartment where contraband was recovered, notwithstanding years of case law establishing that such arrests were improper, none of the individual defendants are entitled to qualified immunity and defendants motion should be denied as to this point.

Page 17

## VI.  THE PERSONAL INVOLVEMENT OF DEFENDANT SERGEANT RONALD SMITH HAS BEEN ESTABLISHED

Defendants assert that plaintiff adduced no evidence during discovery that any of the defendant detectives aside from Detective Garcia were personally involved in her arrest and therefore all claims against them should be dismissed as against them for lack of personal involvement.  *Farrell v. Burke*, 449 F.3d 470 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").  First, it is premature for the dismissal of any claims for lack of personal involvement because the withheld documents that have been requested by plaintiff may tend to show the requisite personal involvement of the individually named defendants in the arrest and prosecution of Ms. Miyares.  Notwithstanding this limitation, the personal involvement of defendant Smith has been clearly established through documents and the deposition testimony of defendant Garcia.  Defendant Smith was defendant Garcia's supervisor on the day that Ms. Miyares was arrested.  He was the officer who approved defendant Garcia's arrest of Ms. Miyares, thus he is clearly personally involved in her allegations of a constitutional violation for false arrest.  *See*, Ex. R, annexed to Haber Declaration NYPD Omniform System Arrest Report, p. 2.  *See also*, Ex. G, Garcia Dep. Tr. p. 33:10-13.

## VII.  MUNICIPAL LIABILITY

Plaintiff has properly pleaded and maintained claims against the individual defendants for false arrest and imprisonment and malicious prosecution in violation of New York state law.  As discussed above, these claims must survive defendants' motion for summary judgment because genuine issues of material fact exist that must be resolved by a jury.  The doctrine of *respondeat superior* renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment, and the test of whether an act was done within the scope of employment is whether the act was done while the servant was doing his master's work, no matter

how irregularly, or with what disregard of instructions.  *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979).  Defendants can maintain no valid argument that individual defendants' actions with respect to procuring and executing the search warrant and prosecuting plaintiff were outside of the scope of their employment.  *Cf. Barton v. City of New York,* 831 N.Y.S.2d 882, 887 (Sup. Ct. Kings County 2007) (collecting state cases where the court chose to refuse to find the City liable when the private disputes of its law enforcement officers result in harm).  Thus, plaintiff's action against defendant City of New York under the theory of *respondeat superior* must survive defendants' motion for summary judgment.

Finally, plaintiff has alleged that defendant City of New York is liable under 42 U.S.C. § 1983 because the violation of her rights occurred pursuant to a municipal policy, practice or custom.  Specifically, the facts suggest a custom or pattern of failing to adequately investigate narcotics allegations, procure a search warrant, and execute a search warrant within the constitutional framework of the Fourth Amendment.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "[S]uch a policy need not be contained in a rule or regulation, so long as it is sufficiently established to rise to the level of 'custom or usage with the force of law.'"  *Davis v. City of New York*, 142 F. Supp.2d 461, n. 15 (S.D.N.Y. 2001), quoting *Monell*, 436 U.S at 691.

The deposition testimony of defendant Garcia raises serious issues regarding the training and supervision of NYPD officers concerning the procurement and execution of search warrants, in particular, the narcotics bureaus handling of confidential informants.  For instance, Garcia stated that he was never provided with any formal training concerning the handling of confidential informants, nor was he provided with any formal training concerning the procurement of search warrants.  *See*, Ex. G, Garcia Dep. T., p. 10 – 15.  A jury could properly conclude that this failure to properly train defendant Garcia directly led to the deprivation of Ms. Miyares' rights to be

free from unlawful arrests and malicious prosecutions.  Therefore, a genuine issue of material fact exists such that summary judgment is improper at this point in the case.

## VIII.   SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFFS' STATE LAW CLAIMS

Defendants argue that plaintiff's state law claims must be dismissed with prejudice for failure to comply with the conditions precedent to suit that are contained in the N.Y. Gen. Mun. Law § 50, *et seq.*  Defendants argue that plaintiff's claims for false arrest were brought outside of the one year and ninety day statute of limitations and that her claim for malicious prosecution should be dismissed because she failed to submit a proper notice of claim after the dismissal of the underlying criminal charges against her.   However, equitable arguments exist concerning these points that would more properly be considered by a New York State court, should this Court decide to dismiss plaintiff's federal claims.  First, plaintiff's false arrest and imprisonment did not end until March 26, 2010 when she was finally arraigned on the charges and released from custody.  Thus the accrual date of her claims was March 26, 2010, not March 25, 2010 and thus her filing of the instant action on June 24, 2011 was within the one year and ninety day limit imposed by Gen. Mun. Law § 50, *et sez.  See., Lynch v. Suffolk County Police Dep't, Inc.*, 348 Fed. Appx. 672, 675-676 (2d Cir. N.Y. 2009).

Second, plaintiff's Notice of Claim listed a claim for malicious prosecution as forming part of the basis for her cause of action; defendant City of New York submitted numerous requests for Ms. Miyares to appear at a hearing pursuant to Gen. Mun. Law § 50-H that were adjourned because the underlying criminal action was still pending; and, finally Ms. Miyares' § 50-H hearing actually was conducted following the dismissal of her underlying criminal charges.  Ms. Miyares' § 50-H hearing was actually conducted on November 18, 2010 and the defendant City of New York had a full and fair opportunity to question Ms. Miyares regarding the circumstances surrounding her claims, including her claim for malicious prosecution because her underlying

criminal action was dismissed prior to the commencement of the § 50-H hearing.  *See*, Ex. 2, Transcript of Ms. Miyares' § 50-H Hearing conducted on November 18, 2010.

## IX.   CONCLUSION

For all the foregoing reasons, plaintiff requests that the Court deny the defendants' motions for summary judgment in all respects.  In the alternative, plaintiff would respectfully recommend to the Court that the motion be deferred to allow time for defendants to produce the requested discovery and permit plaintiff an opportunity to submit additional arguments in opposition to defendants' motion for summary judgment.

Dated:        Brooklyn, New York
              January 25, 2013

                                        KUSHNER LAW GROUP, P.L.L.C.
                                        *Attorney(s) for Plaintiffs*
                                        16 Court Street, Suite 2901
                                        Brooklyn, New York 11241
                                        718.504.1440 (tel) / 718.504.4630 (fax)


                                        _____
                                        Michael P. Kushner, Esq.

Page 21